UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO. 14-_____-CIV-_____

ELLER-I.T.O. STEVEDORING
COMPANY, L.L.C.,

    Plaintiff,
v.

LAZARO PANDOLFO,

    Defendant.
_____/

## COMPLAINT

Plaintiff Eller-ITO Stevedoring Company, L.L.C. ("Eller-ITO"), sues Defendant Lazaro Pandolfo ("Pandolfo"), and states:

### Jurisdiction

1.    Eller-ITO is a Delaware limited liability company. At all material times, Eller-ITO has maintained its principal place of business in Miami-Dade County, Florida.

2.    Pandolfo is a citizen of the State of Florida. At all material times, Pandolfo has resided in the Southern District of Florida.

3.    This is an action for declaratory judgment pursuant to the Declaratory Judgment Act, 28 U.S.C.A. §§ 2201, 2202, and the Longshore and Harbor Workers' Compensation Act ("LHWCA"), 33 U.S.C.A. §§ 901 *et seq.*; for injunctive relief; and for damages. The amount in controversy exceeds $75,000, exclusive of interest and costs. Eller-ITO requests a speedy hearing pursuant to Fed R. Civ. P. 57 with

respect to its claim for declaratory judgment and pursuant to Fed. R. Civ. P. 65(b)(3) with respect to its claim for injunctive relief.

4. Federal jurisdiction exists under 28 U.S.C.A. §§ 1331 and 1333.

5. Venue is proper under 28 U.S.C.A. § 1391 (b) because both Eller-ITO and Pandolfo reside in the Southern District of Florida and events giving rise to this action occurred in this District.

## Factual Allegations

6. Eller-ITO furnishes stevedoring and related maritime services for cargo and cruise vessels in various Florida ports. Its employees engage, in whole or part, in maritime employment on the navigable waters of the United States, on adjoining piers and wharfs, and in container terminals, yards, and other areas customarily used by Eller-ITO in loading and unloading vessels.

7. On October 18, 2007, Pandolfo filled out and signed an Eller-ITO "Employment Application." Eller-ITO then employed Pandolfo as a contract yard superintendent, a position which he held through February 7, 2012. During the period of his employment, Pandolfo worked exclusively for Eller-ITO and did not perform stevedoring work for any other company.

8. As an Eller-ITO yard superintendent, Pandolfo engaged in maritime longshoring operations, including cargo loading and unloading. The nature, methodology, timing, and location of Pandolfo's activities were subject to direction and control by Eller-ITO supervisory personnel. Eller-ITO had – and exercised – the right to control the manner and means of Pandolfo's performance, instructing

him as to service procedures, task sequences, stevedore objectives, and report requirements for particular projects.

9. Eller-ITO management had the power to discipline and fire Pandolfo.

10. Eller-ITO required superintendents, including Pandolfo, to attend monthly safety meetings and training classes. Eller-ITO supervisory personnel and outside experts trained Pandolfo and other superintendents on Eller-ITO safety policies, procedures, duties, and techniques.

11. Pandolfo submitted bi-weekly timesheets, reporting substantial and regular work hours. Based on the timesheets, Eller-ITO paid Pandolfo a fixed hourly wage via check.

12. Eller-ITO provided Pandolfo with certain employment benefits, including:

   a. $200 monthly car allowance;
   b. Cell phone;
   c. Work clothing, including shirts bearing the name Eller-ITO, boots, helmets, and reflective vests;
   d. Tools, including radios, personal protective equipment, clipboards, and pens;
   e. Payment in full for Pandolfo's Transportation Worker Identification Card ("TWIC");
   f. Payment in full for Pandolfo's PortMiami ID card;
   g. Payment in full for Pandolfo's Special Dockside Permit, which allowed Pandolfo to park his vehicle in terminal and berth areas;

      h.  Bonuses and overtime.

13. To process reimbursements and payments, Eller-ITO's accounting software assigned every Eller-ITO employee, including Pandolfo, a "Vendor ID" number.

14. At all material times, Eller-ITO procured, provided, and paid for workers' compensation, including LHWCA, coverage for Pandolfo with Signal Mutual Indemnity Association, Ltd. ("Signal"). Eller-ITO's annual submissions to Signal identified Pandolfo as a covered LHWCA employee. Pandolfo did not procure, provide, or pay for his LHWCA or Florida State workers' compensation coverage.

15. Pandolfo acknowledged that Eller-ITO was his employer on several documents, such as:

      a.  Tax return documents filed with the IRS;

      b.  PortMiami ID documents;

      c.  TWIC documents;

      d.  Miami-Dade County Special Dockside Permit;

      e.  Eller-ITO mandatory training sign-in sheets.

**Pandolfo's Status as Eller-ITO Employee on February 7, 2012**

16. On February 7, 2012, Seaboard Marine, Ltd., Inc. ("Seaboard") engaged Eller-ITO to perform stevedoring services, loading containers onto the Seaboard vessel *M/V Hanneburg*, which was berthed in PortMiami adjacent to a terminal operated by Seaboard. Pursuant to its engagement by Seaboard, Eller-ITO issued a labor order directing four (4) of its stevedore superintendents to work

HAMILTON, MILLER & BIRTHISEL, LLP
150 Southeast Second Avenue, Suite 1200, · Miami, Florida 33131 · Telephone: 305-379-3686 · Facsimile: 305-379-3690

on February 7, 2012 in loading the *M/V Hanneburg*. The order included two yard superintendents and two ship superintendents who work in tandem (in effect, as right and left hands) to load containers onto the vessel.

17. An Eller-ITO yard superintendent's duties include:

    a. Identifying containers to be loaded onto the vessel according to a loading plan provided by Seaboard;

    b. Directing one of the two 4-person gangs of laborers (union members of the International Longshoreman's Association, or "ILA") to perform all physical labor and loading activities to bring containers to the ship ;

    c. Coordinating loading activities via two-way radio with the Eller-ITO ship superintendent;

    d. Maintaining a proper lookout, overseeing the activities of the toploader operators, and maintaining awareness of the location of toploader operators at all times.

18. An Eller-ITO ship superintendent's duties include:

    a. Directing the loading of containers onto the vessel;

    b. Coordinating with the vessel personnel and the crane operator (an ILA member); and

    c. Coordinating activities via two-way radio with the Eller-ITO yard superintendent.

19. Eller-ITO's labor order tasked Pandolfo to work as a yard superintendent during the container loading operations. After receiving the labor order, Pandolfo reported to work and began to perform his duties.

20. As vessel loading operations commenced, Pandolfo followed the vessel loading plan furnished by Seaboard to identify containers for loading onto the vessel. Pandolfo directed two toploader operators to pick up and transport particular containers to the ship area, where they would be under the control of the ship superintendent, Farconelly Clark, for loading onto the ship.

21. At approximately 11:37 p.m. on February 7, 2012, Pandolfo and Clark walked across a wide, unobstructed lane being used by the toploader operators for transporting containers to the vessel. Pandolfo was trying to locate certain flat racks for loading. As Pandolfo walked across the lane looking for the flat racks, he failed to maintain a proper lookout. Pandolfo stepped directly in front of, and was struck by, a toploader operated by Dwayne Cooper ("Cooper"). The injuries to his leg resulted in amputation below the knee.

22. When Pandolfo sustained injury, he was engaged in maritime employment by Eller-ITO as a yard superintendent. His injury occurred at a terminal adjoining navigable waterways at PortMiami while Pandolfo was involved in longshoring operations – *i.e.,* loading containers onto the *M/V Hanneburg*, a cargo vessel.

23. Pandolfo's duties and his performance as a yard superintendent comprised an essential part of Eller-ITO's stevedoring and vessel loading operations. Duties that Pandolfo was obligated to perform on the night of the incident, and throughout the course of his employment by Eller-ITO, were (a) regularly performed by Eller-ITO employees, (b) prescribed and governed by Eller-

...

ITO policies and procedures, and (c) reinforced by mandatory safety meetings and training provided to Eller-ITO superintendents.

## Pandolfo's Pending LHWCA Claims

24.     Following the February 7, 2012 accident, the United States Department of Labor, Division of Longshore and Harbor Workers' Compensation ("DOL"), exercised jurisdiction over Pandolfo's claim pursuant to its Congressional authorization under the LHWCA and assigned OWCP No. 06-212952 to the proceeding.  Pandolfo immediately began accepting and collecting LHWCA compensation, medical and other benefits and payments, from Signal.

25.     On November 19, 2012 (about 10 months prior to filing a state court lawsuit against Eller-ITO and Cooper), Pandolfo signed a document titled "Authority to Represent Longshore & Harbor Worker's Compensation," stating:

> On this 21st day of November, 2012, ***[I] do hereby retain the law firm of TEMPLER & HIRSCH, P.A., to represent me with regard to my Longshore Worker's Compensation claim resulting from an accident occurring on or about 2.7.12, while employed by Eller ITO, Port of Miami***.... I hereby authorize my attorney to investigate this claim, file a claim on my behalf, and take any and all other steps he deems necessary regarding same, including appeal, ***to secure all benefits to which I may be entitled under the Longshore & Harbor Worker's Compensation Act***.

Additionally, Pandolfo acknowledged that he did "enter into this agreement freely and voluntarily, and I have read and do fully understand it in its entirety."

26.     Pursuant to Pandolfo's authorization and instructions, Attorney Mark Hirsch pursued an LHWCA claim on his behalf in the DOL.  Hirsch filed the Authority to Represent Longshore & Harbor Worker's Compensation document signed by Pandolfo and a Notice of Appearance, on December 4, 2012 in a

proceeding styled *Lazaro Pandolfo, Employee/Claimant, v. Eller-ITO Stevedoring Co., Employer*, Claim No. 2011-11293, OWCP No. 06-212952. According to the DOL records for Case OWCP No. 06-212952, Lazaro Pandolfo is a "Claimant," represented by Mark Hirsch, and Eller-ITO is Pandolfo's "Employer."

27.    Pursuant to Pandolfo's express authorization, Hirsch wrote a December 7, 2012, letter to the DOL, petitioning for LHWCA benefits. Identifying Pandolfo as "Employee/Claimant", the letter stated that Hirsch "represents Lazaro Pandolfo," and "Mr. Pandolfo is requesting an informal conference in Miami or a telephonic conference, ***regarding his Longshore claim*** …. Mr. Pandolfo needs his home modified as soon as possible."  (emphasis added).

28.    As Pandolfo's attorney, Hirsch continued to petition for additional benefits via a letter dated February 12, 2013.

29.    In January and February 2014, Pandolfo submitted letters to DOL Deputy Director, Charles Lee; his case manager, Sharon Dufek; and Signal's third-party administrator, Kimberly Almaguer. Pandolfo expressed dissatisfaction with certain LHWCA benefits and requested additional benefits.

30.    The DOL has held several conferences regarding the administration of LHWCA benefits requested by Pandolfo, as a statutory LHWCA employee and paid by Signal. Pursuant to Pandolfo's affirmative claims for LHWCA benefits in the pending DOL proceeding, Signal's payments to providers for LHWCA medical and other benefits total $498,069.78 as of June 30, 2014. Moreover, Pandolfo individually signed and deposited numerous checks from Signal, totaling at least $89,766.25 as of June 30, 2014, and representing LHWCA indemnity payments

(analogous to wage or disability payments).  Signal's LHWCA payments to or for the benefit of Pandolfo presently exceed $587,836.03 as of June 30, 2014.

31. On or about June 25, 2014, Signal requested that the DOL Deputy Director refer certain issues that have arisen between Pandolfo and Signal to the Office of Administrative Law Judges for adjudication and resolution.  On or about July 7, 2014, Pandolfo responded: he admitted that he was working for Eller-ITO "in the position of Yard Superintend (*sic*)" and stated that the issue he "will present at formal hearing" is "Claimant's [Pandolfo's] status as a statutory employee or a vendor/independent contractor at the time of the subject accident."  Meanwhile, the LHWCA payments to Pandolfo and to providers for his benefit continue.

### Pandolfo's Pending State Claims

32. In August 2013 Pandolfo's attorneys filed and served a Second Amended Complaint in an action pending in the Circuit Court of the Eleventh Judicial Circuit in and for Miami-Dade County, Florida, Case No. 13-04180 CA 32. In addition to Seaboard and Miami-Dade County, the original defendants, the Second Amended Complaint has named and joined Eller-ITO and Cooper as defendants.

33. Alleging that Eller-ITO negligently "operated or maintained" the toploader and "breached its duty of care," Pandolfo claims:

> That as a direct and proximate result of the negligence of the Defendant ELLER, the Plaintiff PANDOLFO suffered bodily injury and resulting pain, suffering, disability, disfigurement, mental anguish, loss of capacity for the enjoyment of life, the expenses of hospitalization, medical and nursing care and treatment, loss of earnings, loss of ability to earn money, and aggravation of a known or unknown previously existing condition.  The losses are continuing in

nature and the Plaintiff PANDOLFO will continue to suffer these losses in the future.

34. Subsequently Eller-ITO moved to dismiss the Second Amended Complaint. Denying the motion, the circuit judge told Eller-ITO's counsel that "based on the additional documents outside the four corners of the pleadings, I think you very well could be correct" that once Eller-ITO accepted responsibility under section 904 "for paying the insurance," the LHWCA provided Pandolfo's exclusive remedy. The court concluded: "I'll allow you to present it again under a motion for summary judgment. Once, you know, once you have your discovery complete. And you should.ö

35. All conditions precedent to this action have been met, satisfied, or waived.

**Count I**

Eller-ITO re-alleges and incorporates paragraphs 1-35 above as if fully set forth herein and further states:

36. At the time of Pandolfo's injury on February 7, 2012 and at all material times, Pandolfo remained subject to the LHWCA's exclusive jurisdiction and remedies:

   a. Pandolfo's "status" was engaging in maritime employment, including longshore operations and other work normally performed by Eller-ITO employees in furtherance of Eller-ITO's stevedoring commitments to Seaboard, as an Eller-ITO yard superintendent and LHWCA employee, as defined in 33 U.S.C.A. § 902(3);

   b. Eller-ITO, an employer of employees in maritime employment on the navigable waters of the United States and adjoining piers, terminals and other areas customarily used by Eller-ITO in loading and unloading vessels, was Pandolfo's LHWCA employer, as defined in 33 U.S.C.A. § 902(4);

   c. Pandolfo's injury arose out of and in the course of maritime employment – *i.e.,* Eller-ITO container loading operations involving *M/V Hanneburg*, as defined in 33 U.S.C.A. § 902(2);

   d. The "situs" of Pandolfo's injury was a terminal area customarily used by Eller-ITO in loading and unloading vessels and adjoining the navigable waters of the United States, as defined in 33 U.S.C.A. § 903(a);

   e. Eller-ITO secured payment of the compensation payable to Pandolfo under the LHWCA through Signal, a "carrier" authorized to insure under the LHWCA, as defined in 33 U.S.C.A. § 902(5).

37. At all material times, Eller-ITO's liability to Pandolfo has been prescribed by 33 U.S.C.A. § 904. Such liability has been exclusive and in place of all other liability of Eller-ITO to Pandolfo, his legal representative, wife, parents, dependents, next of kin, and anyone otherwise entitled to recover damages from Eller-ITO at law or in admiralty on account of Pandolfo's injury, as provided in 33 U.S.C.A. § 905(a).

38. After February 7, 2012, Pandolfo has petitioned for, received, and continues to receive LHWCA compensation from Eller-ITO through Signal. Pandolfo has benefited from LHWCA presumptions delineated in 33 U.S.C.A. § 920.

To knowingly and willfully make a false statement or representation for the purpose of obtaining a LHWCA benefit or payment would be a felony, as defined in 33 U.S.C.A. § 931(a).

39.     By authorizing, filing, serving, and prosecuting the above-described claims against Eller-ITO in the Circuit Court of the Eleventh Judicial Circuit in and for Miami-Dade County, Florida, Case No. 1304180 CA 32, Pandolfo has violated the LHWCA.  At all material times, Pandolfo and his attorneys have or should have known that the Florida court lacks subject matter jurisdiction and that the LHWCA preempts all state and common law claims or causes of action arising out of or related to the accident and his injuries.   Furthermore, Pandolfo and his attorneys have or should have known that the DOL has exclusive jurisdiction over his claims against Eller-ITO.  LHWCA orders issued by the DOL are subject to enforcement, modification, and review by the federal courts, as delineated in the LHWCA, including 33 U.S.C.A. §§ 918, 919, and 921 (a).

40.     As a result of Pandolfo's LHWCA violations, Eller-ITO has sustained monetary damages, including but not limited to attorney's fees and litigation expenses incurred in defending Pandolfo's claims in the pending Florida state court case, and has been compelled to produce confidential and proprietary information in the Florida court.  Such damages are continuing.

WHEREFORE, Eller-ITO respectfully seeks:

(1)     A declaratory judgment that the LHWCA is Pandolfo's exclusive remedy against Eller-ITO; that the DOL has exclusive jurisdiction over Pandolfo's claims against Eller-ITO; that the Florida court lacks subject matter jurisdiction

over Pandolfo's claims against Eller-ITO; and that Pandolfo's authorizing, filing, serving, and prosecuting claims against Eller-ITO in the Florida court violate the LHWCA;

(2)     Preliminary and permanent injunctive relief, prohibiting Pandolfo, his attorneys, and other representatives, from further prosecution of claims against Eller-ITO in any federal or state court and mandating that Pandolfo immediately dismiss the pending action against Eller-ITO in the Florida court;

(3)     Judgment against Pandolfo for damages;

(4)     Such other and further relief as this Court deems proper.

Eller-ITO requests a speedy hearing pursuant to Fed R. Civ. P. 57 with respect to its claim for declaratory judgment and pursuant to Fed. R. Civ. P. 65(b)(3) with respect to its claim for injunctive relief.

Respectfully submitted,

/s/ Jerry D. Hamilton
Jerry D. Hamilton
Florida Bar No. 970700
jhamilton@hamiltonmillerlaw.com
Robert M. Oldershaw
Florida Bar No.: 86071
roldershaw@hamiltonmillerlaw.com
Matthew P. O'Brien
Florida Bar No. 10072
mobrien@hamiltonmillerlaw.com
HAMILTON, MILLER & BIRTHISEL, LLP
*Attorneys for Plaintiff Eller-I.T.O.*
150 Southeast Second Avenue, Suite 1200
Miami, Florida 33131-2332
Telephone:   (305) 379-3686
Facsimile:     (305) 379-3690